IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Tito Lemont Knox, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 0:08-3651-HMH |
| vs. ) | |
| ) | **OPINION & ORDER** |
| ) | |
| David M. Creech, and Karl R. Bodtorf, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Tito Lemont Knox's ("Knox") pro se petition for habeas corpus relief pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 397 (1971). For the reasons set forth below, the court dismisses this case without prejudice and without issuance and service of process.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On June 13, 2005, Greenville County officers arrested Knox after receiving a report of a suspicious person discharging a firearm. (Knox's § 2241 Pet. Attach. (Incident Report) in C.A. No. 9:07-1792-HMH-GCK.)[1] After observing Knox lying on the ground and running his hand along a rope, which Knox referred to as a snake, Sheriff's Deputy Travis Graham ("Deputy Graham") asked Knox if he had a gun. (<u>Id.</u>) Knox stated that he had a BB gun in his truck, which Deputy Graham retrieved. (<u>Id.</u>) In addition, Deputy Graham retrieved a .357 magnum

---

[1]Knox filed a previous § 2241 petition in C.A. No. 9:07-1792-HMH-GCK, and the facts related to Knox's arrest are derived from documents filed in that action.

1

Ruger revolver from Knox during a search performed after neighbors informed another deputy that Knox had a mental condition and he had a handgun on his person that he had previously fired toward the roadway before Deputy Graham's arrival. (Id.)

As a result of the above events, Knox was indicted in criminal case number 6:06-269 in this court for possession of a firearm by a convicted felon on March 14, 2006. In an emergency order dated March 21, 2006, Magistrate Judge William M. Catoe ordered that Knox undergo a psychiatric evaluation to determine

1. Whether or not, at the time of the criminal conduct alleged . . . , the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality of the wrongfulness of his acts; and

2. Whether or not the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

(March 21, 2006, Order 2.) In a report dated June 29, 2006, the BOP reported that Knox was not competent and recommended that Knox be placed "in a secure psychiatric facility for restoration of competency." (June 29, 2006, Report 10.) Further, the report indicated that Knox's sanity at the time of the offense "cannot be addressed until such time as the question of competency is clarified" because "so long as the defendant is believed to be inappropriate for continuation of criminal proceedings, the question of insanity cannot be ethically considered." (Id. at 11.)

On July 13, 2006, Magistrate Judge Bruce Howe Hendricks ordered that Knox be committed to the custody of the Attorney General for hospitalization not to exceed four months

to determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the case to proceed." (July 13, 2006, Order 2.)

Knox was sent to the Federal Medical Center at Butner, North Carolina ("Butner") for a competency restoration study. In a report dated September 14, 2006 ("Report"), Dr. Ralph Newman ("Dr. Newman") and Edward E. Landis, Ph.D. ("Dr. Landis") (collectively "reviewers") opined that Knox was not competent due to paranoid schizophrenia and that he required treatment with psychotropic medication. However, Knox was incapable of consenting to such treatment. Hence, the reviewers recommended that the court order that Knox be involuntarily medicated with psychotropic medications. The court held a hearing on November 6, 2006, to consider the BOP's request. Dr. Newman testified at the hearing for the Government. Knox did not present any witnesses. On November 7, 2006, the court ordered that Knox be involuntarily medicated.

Subsequently, on June 11, 2007, Knox moved to suppress evidence of the .357 revolver on the ground that it was discovered during a warrantless search not covered by any exception to the warrant requirement. On June 19, 2007, the court found that the search of Knox was constitutional and denied Knox's motion to suppress.

Later the same day, this court conducted a bench trial and, based on the facts of the case and a report regarding Knox's mental examination, found Knox competent to proceed but not guilty by reason of insanity. On June 21, 2007, pursuant to 18 U.S.C. § 4243, the court ordered Knox to be committed for treatment until he was no longer a threat to himself or others. On August 11, 2008, the Warden of Rochester Federal Medical Center, Duke Terrell, submitted a

Certificate of Conditional Release and Annual Risk Assessment, recommending that Knox be released from confinement subject to certain conditions.

The court held a hearing on September 30, 2008. Knox was released from his confinement subject to certain conditions pursuant to the court's order on September 30, 2008, which found that Knox had proven by a preponderance of the evidence that he has recovered from his mental disease or defect to such an extent that his conditional release, under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another. The court imposed the following conditions:

1. Mr. Knox shall reside at 107 Saxon Drive, Piedmont, South Carolina 29673, (864) 422-2584, with his mother, Geraldine Knox. Mr. Knox shall not make any change in his residence without the advance approval of the mental health providers and his supervising U.S. Probation Officer.

2. Mr. Knox is restricted from traveling outside the local area except with the prior approval of the U.S. Probation Officer.

3. Mr. Knox shall appear for an initial appointment at a facility approved by the U.S. Probation Office. He shall comply with weekly psychological treatment until the treating psychologist deems differently. Mr. Knox shall comply with any psychiatric treatment, with such treatment including oral and injectable medications and any other psychotropic medication deemed necessary by his treating clinicians.

4. While Mr. Knox is in outpatient counseling, he may be admitted as an inpatient to any facility designated by the South Carolina Department of Mental Health and Mental Retardation should his treating clinicians deem it necessary.

5. Mr. Knox shall abstain from all use of alcohol and other drugs not prescribed by his treating physician. If on prescription medication, his treating physician shall not discontinue the administration of anti-psychotic drugs to Mr. Knox without providing advance written notice to the U.S. Probation Officer.

6.  Mr. Knox shall submit to urine analysis and other drug testing for the detection of the use of controlled substances and undergo regular urine and serum blood screening as ordered by the treating physician and U.S. Probation Officer to ensure abstinence from substances and the maintenance of a therapeutic level of medication.

7.  Mr. Knox shall participate in outpatient substance abuse counseling as directed by the U.S. Probation Officer if deemed necessary.

8.  Mr. Knox shall have daily contact with his mother, Geraldine Knox, until such time as the U.S. Probation Officer believes modifications of this requirement are justified. If at any time Geraldine Knox has information that might relate to Mr. Knox's safety or the safety of the community, she is to report it to the U.S. Probation Officer within 24 hours of receiving it.

9.  Mr. Knox shall not possess any firearms, destructive device, or other dangerous weapons.

10. Mr. Knox shall not commit another federal, state or local crime.

11. Mr. Knox shall report any contact with any law enforcement officer to the U.S. Probation Office within 24 hours of the contact.

12. Mr. Knox shall be supervised by the U.S. Probation Office until further order of this court, to ensure his compliance. Mr. Knox shall comply with the standard conditions of the U.S. Probation Office, District of South Carolina, including waiving his right to confidentiality regarding his mental health treatment in order to allow sharing of information with the supervising U.S. Probation Officer, who will assist in evaluating the ongoing appropriateness of community placement.

13. Mr. Knox shall truthfully and completely submit a written monthly report to the U.S. Probation Office within the first five working days of each month.

14. The medical provider may at any time recommend modifications or elimination of the regimen of medical, psychiatric, or psychological care or treatment upon certification to this court that to do so would not create a substantial risk of bodily injury to another person or serious damage to the property of another. Any party requesting modification or termination of the conditions of release shall submit adequate documentation supporting the request through the Supervisory U.S. Probation Officer, to the Civil

>    Division of the U.S. Attorney's Office for the District of South Carolina, for a determination as to whether a motion for release should be filed.
>
> 15.   Mr. Knox's failure to adhere to any of these conditions will result in him being located, taken into custody, and subsequently reviewed for suitability for continued release to the community.

(Sept. 30, 2008, Order, generally.) On October 27, 2008,[2] Knox filed the instant complaint requesting that the "Court . . . terminate the conditions immediatly [*sic*] which were Illegally enacted, In this Case Causing me Serious harm [*sic*] I would Ask this Court to provide One million dollars For Continued Suffering and stress." (Compl. at 4.)

## II. DISCUSSION OF LAW

Defendant David M. Creech ("Creech") is a probation officer with the United States Probation Office, and Defendant Karl F. Bodtorf ("Bodtorf") is a psychologist that is treating Knox. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994). Quasi-judicial immunity is also absolute. See id. The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]" Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992) (internal quotation marks omitted). Pursuant to the court's September 30, 2008 order, Creech, as a probation officer, and Bodtorf, as a psychologist, are supervising Knox to ensure his compliance with the conditions of his release. Creech and

---

[2]See Houston v. Lack, 487 U.S. 266 (1988).

Bodtorf are absolutely immune from suit for their actions in carrying out the court's September 30, 2008 order.

It is therefore

**ORDERED** that this case is dismissed without prejudice and without issuance and service of process.

**IT IS SO ORDERED**.

               s/Henry M. Herlong, Jr.
               United States District Judge

Greenville, South Carolina
November 14, 2008

### NOTICE OF RIGHT TO APPEAL

The Petitioner is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.